# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Charles Hill and <br> Donna Hill, <br><br> Plaintiffs, <br><br> v. <br><br> C. Harrington, Walls, Elena B. McKenna, <br> Scott P. Liebhaber, Robert W. Purvis, <br> Matthew M. Pufpaf, John A. Gartner, <br> David M. Rodriguez, Alan P. Lasch, <br> Kevin S. Geyer, Steven E. Suvada, <br> City of Chicago, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 18 C 05592 <br><br> Judge Edmond E. Chang |

## MEMORANDUM OPINION AND ORDER

Chicagoans Charles and Donna Hill lived in an apartment right upstairs from their relative, Keitrion Lewis. R. 1, Compl. ¶¶ 8-10.[1] They allege that, in August 2016, two Illinois Department of Corrections parole officers and several Chicago Police Department officers entered and searched their home without a warrant and without their consent, apparently mistaking it for Lewis's apartment. *Id.* ¶¶ 14-16. The Hills now sue the individual officers and the City of Chicago for violating their Fourth Amendment rights by unlawfully entering and searching their home and seizing their property. Defendants Harrington and Walls have moved to dismiss Counts 2 and 4 of the Complaint, arguing that those counts are redundant of Counts 1 and 3,

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (as to the federal claims) and supplemental jurisdiction on the state claim. Citations to the docket are noted by "R." followed by the docket number and, where necessary, a page or paragraph citation.

respectively. R. 54, Mot. Dismiss. For the reasons explained below, Harrington and Walls's motion to dismiss is granted in part. Count 4 is dismissed, but Count 2 remains.

**I. Background**

For the purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In August 2016, the Hills lived at 4436 West Jackson Boulevard, on the second floor. Compl. ¶ 8. Lewis, lived on the first floor of the same building. *Id*. ¶ 10. At the time, Lewis was on parole under the supervision of the Illinois Department of Corrections. *Id*. ¶ 9. Although the Hills and Lewis are related, their respective apartments were separate: "distinct units, with different means of ingress and egress and separated by locked doors." *Id*. 18.

In August 2016, Defendants Harrington and another parole agent with the last name Walls were serving as Lewis's parole officers. Compl. ¶ 9. Elena McKenna, Scott Liebhaber, Robert Purvis, and Matthew Pufpaf were members of the Chicago Police Department. *Id*. ¶ 6. John Gartner, David Rodriguez, Alan Lasch, and Kevin Geyer were CPD supervisors. *Id*. ¶ 12. Steven Suvada was a CPD detective. *Id*. ¶ 13.

The Hills allege that, on August 31, 2016, all of the individual Defendants— except Detective Suvada—entered their apartment without a warrant or any other legal justification. Compl. ¶¶ 14-17. While they were there, the Defendants searched the Hills' apartment and back porch, "leaving the home in disarray." *Id*. ¶¶ 19-20. They also cut the lock on Charles's gun locker and seized his firearms and

ammunition. *Id.* ¶¶ 21-22. During the time that the Defendants searched the home, the Hills were not allowed to go inside it. *Id.* ¶¶ 23-25.

After the search, Charles Hill was unable to return to work as a part-time security guard because his firearms and ammunition had been seized. Compl. ¶ 27. His firearm and ammunition have not been returned to him. *Id.* ¶¶ 27-28. The Hills allege that in addition to the loss of the firearms, ammunition, and gun-locker lock, they "sustained humiliation and indignities, and suffered great mental and emotional pain and suffering." *Id.* ¶ 30.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

3

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Harrington and Walls argue that Counts 2 and 4 of the Complaint should be dismissed because they are redundant with Counts 1 and 3. The Court will discuss each in turn.

### A. Claim 2 (Scope and Duration)

Harrington and Wells argue that Counts 1 and 2 are really the same, and thus that Count 2 should be dismissed. Mot. Dismiss at 4-5 ("[The] alleged unlawful entry into Plaintiffs' home is where Plaintiffs' alleged injury occurs in both Count I and Count II."). The Hills, on the other hand, maintain that although the claims are both for violations of their Fourth Amendment rights, they are chronologically and legally distinct. R. 60, Pls.' Resp. at 3-5 ("Count I pertains to the illegal entry and Count II pertains to the illegal scope and duration of the police occupation of the home."). Put another way, Count 1 seeks recovery for the Defendants' illegal *entry* into the home,

4

while Count 2 claims "that defendants overstayed their occupation of the Hill home and performed a thorough, invasive search of the home even after it was clear they were in the wrong place." *Id.* at 3. The Hills point out that officers are "obligated to cease [a] search if [they are] unable to determine that the unit [they] are searching is properly the subject of the search." *Id.* at 4 (citing *Jacobs v. City of Chi.*, 215 F.3d 758, 771 (7th Cir. 2000)).

It is true that district courts have the authority to strike duplicative counts from complaints. *See, e.g., Einhaus v. Textmunication Holdings, Inc.*, 2018 WL 398258, at *6 (N.D. Ill. Jan. 12, 2018); *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 992 (N.D. Ill. 2010); *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795-96 (N.D. Ill. 2010) ("It is well-settled that duplicative counts in a compliant may be properly dismissed."). The authority for this practice is not exactly clear, and the Seventh Circuit cases frequently cited as authority do not explicitly condone it. *See Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744, (7th Cir. 2014) (noting that *Illinois* courts require claims to be dismissed as duplicative in certain situations); *Norfleet v. Stroger*, 297 Fed. App'x 538, 540 (7th Cir. 2008) (nonprecedential disposition) (explaining the requirements for dismissing duplicative *cases*). That said, Rule 12 allows a court to strike "any redundant ... matter" from a pleading. Fed. R. Civ. P. 12(f); *see also Kurtz v. Toepper*, 2012 WL 33012, at *1 (N.D. Ill. Jan. 6, 2012). So the Court is permitted to strike a count if it is redundant.

Here, the Hills are correct that the counts allege distinct facts from one another. Indeed, the titles reflect the difference. Count 1 is entitled, "Unconstitutional Entry and Search of Home." Compl. ¶¶ 33-38. Count 2 is labelled, "Unreasonable Scope of the Occupation and Search of Home." *Id.* ¶¶ 39-44. Yes, the two counts recite some overlapping facts: both allege that the Defendants knew or should have known they were in the wrong apartment. *See id.* ¶¶ 35, 40. The difference is that Count 1 alleges that they *entered* without legal justification, *id.* ¶ 34 ("[The Defendants] illegally entered the home of plaintiffs … without a valid warrant for the home, without permission, without probable cause, without exigent circumstances, and failing to knock and announce their office."), while the second alleges that they *stayed* in and *searched* the apartment even *after* they knew they were in the wrong apartment, *id.* ¶ 40 ("[The Defendants] illegally remained in and searched the home of plaintiffs … beyond the time they knew or should have known that they were in the wrong apartment.").

The factual differences between the two claims make them legally distinct. As an example, consider a scenario in which a jury finds that the officers were reasonable (albeit mistaken) in entering the apartment and searching initially for the suspect. That means no liability on Count 1. But the jury could then find that, despite the reasonableness of the entry and initial search, the Defendants overstayed and conducted an unreasonably broad search (they went beyond looking for the suspect, for example). That would mean liability on Count 2. So, the two counts do not necessarily rise or fall together. No wonder, then, that Harrington and Wells never

6

admit that if the Hills win on Count 1, they must also win on Count 2, or vice-versa. *See generally*, Mot. Dismiss; R. 64, Defs.' Reply. To dismiss Count 2 here would deny the Hills the second possible avenue of relief described above. As a result, the counts are not duplicative of each other.

As an analog, the Hills point out that an officer with a warrant cannot continue a search once he discovers a mistake in the warrant or that it is ambiguous as to the exact space where a search can take place. Pls.' Resp. at 5 (citing *Guzman v. City of Chi.*, 565 F.3d 393, 397 (7th Cir. 2009) (holding that the officers were required to stop their search once they realized the building in question was not a single-family residence, as they had originally believed); *Jones v. Wilhelm*, 425 F.3d 455, 462-63 (7th Cir. 2005) (holding that a warrant that could have been read to allow entrance to either of two apartments on the second floor of a building was ambiguous and thus invalid)); see also *Maryland v. Garrison*, 480 U.S. 79, 88-89 (1987) (holding that officers had a duty to stop their search once they realized that there were two apartments instead of one on the third floor of the plaintiff's building). Harrington and Wells argue that the warrant cases are useless here because there was no warrant at issue, Defs.' Reply at 1, but that is a distinction that might not make a difference. In the warrant context, officers might have legal authority to begin and continue a search until the moment when it becomes reasonably clear that their initial authority was based on faulty information. That is also the case here.

Part of Harrington and Wells's concern with keeping the two counts separate is that doing so would expose them to double damages. *See* Mot. Dismiss at 5. That is

7

a fair concern. Given that the two counts plead different sets of fact, however, the Hills do not appear to be *seeking* double damages for the same injuries. And as they point out, Pls.' Resp. at 2, appropriate jury instructions and a carefully crafted verdict form can ensure that the jury does not make that mistake. Harrington and Wells's motion is, thus, denied as to Count 2.

### B. Count 4 (Due Process)

Harrington and Wells make the same argument on Count 4 as they did on Count 2, this time arguing that it is redundant of Claim 3. Mot. Dismiss at 5-6. Counts 3 and 4 are more similar than Counts 1 and 2 are. Count 3 is a Fourth Amendment claim for seizure of and damage to property. Compl. ¶¶ 45-52. Count 4 is a due process claim alleging exactly the same facts and injuries, except that the words "without due process" are added to Paragraphs 54 and 56. *Id*. ¶¶ 53-60. That means that instead of alleging two sets of facts that fall under a similar constitutional theory (as with Claims 1 and 2), Claims 3 and 4 include *one* set of facts that the Hills attempt to fit into two different constitutional theories.

As a preliminary matter, it is necessary to clear up some confusion in the Hills' response brief about the standard for a Rule 12(b)(6) motion. The Hills stress that they are not required to identify a legal theory in their complaint. Pls.' Resp. at 4 (citing *Whitaker v. Milwaukee Cty., Wisc.*, 772 F.3d 802, 809-10 (7th Cir. 2010) (holding that the plaintiff was allowed at the summary judgment stage to "offer[] an alternative legal characterization" of the facts she pled in her complaint)). That is true in the sense that they were not required to explicitly point to the applicable

constitutional provisions or statutes in the text of the complaint itself. *See King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (quoting *Ryan v. Illinois Dep't of Children and Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999) ("We have consistently held that plaintiffs are not required to plead legal theories. While a plaintiff may plead facts that show she has no claim, she cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all.") (cleaned up)).

But that does not mean that the facts of the complaint need not support any identifiable legal theory—such a rule would fly in the face of Rule 8 and the principle that the facts alleged must amount to a *legal* entitlement to relief. Fed. R. Civ. P. 8(a)(2) (requiring a complaint to include "a short and plain statement of the claim *showing that the pleader is entitled to relief*.") (emphasis added); *Iqbal*, 556 U.S. at ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint … has not shown … that the pleader is entitled to relief.") (cleaned up). Given the requirement that the complaint must "state a claim *for which relief can be granted*," the Hills were required to respond to Harrington and Wells's legal arguments as to whether the facts alleged in Count 4 support any viable legal theory. Fed. R. Civ. P. 12(b)(6) (emphasis added). The response brief does not do that.

As Harrington and Wells argue in their motion, a substantive due process claim cannot stand where another, more specific constitutional provision already provides relief for the same injury. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (in the context of a § 1983 claim of excessive force, explaining that "[b]ecause the

Fourth Amendment provides an explicit textual source of constitutional protection against … physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."); *see also Brokaw v. Mercer Cty.*, 235 F.3d 1000, 10178-18 (7th Cir. 2000) ("[S]ubstantive due process should not be called upon when a specific constitutional provision protects the right allegedly infringed upon.") (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); Mot. Dismiss at 6-7. The facts alleged for both Counts 3 and 4 are essentially identical (including seizure of Charles Hill's firearms and ammunition, loss of property and security guard wages as a result of the seizure, seizure and retention of cash, and damage to the lock on Charles' gun locker) and seem to fit under Count 3's Fourth Amendment claim for unreasonable seizure of property. Given that the Hills have failed to make any argument as to why some of those facts are covered by substantive due process instead of under the Fourth Amendment, and fail to otherwise respond to Harrington and Wells's arguments on this point (or propose an amendment to the complaint to fix the problem), Count 4 must be dismissed. *See generally* Pls.' Resp. at 6-7.

Perhaps the Hills intended to plead a claim for *procedural* due process instead of substantive due process—in which case the rule in *Graham* would not apply. *See* Pls.' Resp. at 6 ("Mr. Hill was not charged with a crime, yet the property was taken as evidence, with no recourse to obtain its prompt return."). But the Hills do not make that argument directly in their response brief, and it is not clear on the face of the complaint. Because the Hills failed to respond meaningfully to Harrington and Wells'

arguments on Count 4, it must be dismissed. The dismissal is without prejudice—the Hills will be permitted to amend if they believe they can propose a successful procedural due process claim.[3] Any motion to file an amended complaint on this ground must be filed by September 9, 2019.

## IV. Conclusion

For the reasons explained above, the motion is granted in part and denied in part. Count 2 (scope and duration of search) remains intact and Count 4 is dismissed without prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 25, 2019

---

[3]It is possible that a procedural due process claim might run afoul of the *Parratt-Hudson* doctrine. An officer has a full defense to a procedural due process claim "where [the] loss of property [was] occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure." *Hudson v. Palmer*, 468 U.S. 517, 532 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). The doctrine applies where the government "could not predict the conduct causing the deprivation, could not provide a pre-deprivation hearing as a practical matter, and did not enable the deprivation through established state procedures and a broad delegation of power." *Armstrong v. Daily*, 786 F.3d 529, 544 (7th Cir. 2015). The Seventh Circuit has also made clear that "[s]ituations involving such random and unauthorized conduct are relatively rare." *Simpson v. Brown Cty.*, 860 F.3d 1001, 1007 (7th Cir. 2017); *see also Bradley v. Vill. of Univ. Park, Illinois*, 929 F.3d 875, 898 (7th Cir. 2019) (explaining that the doctrine should be interpreted narrowly). Still, if the Hills are alleging that the individual Defendants were rogue actors, acting without delegation or authority from the state, the doctrine might apply here. And the Hills should carefully consider whether it might ultimately be unwise to assert a less legally stable claim that would require a new trial if they prevailed on it but the court of appeals disagreed with its viability.